WILLIAM FOERSTER and Others, Respondents, *v.* JOSEPH GALLINGER and Another, Appellants.

*Sales — entire contract, deliveries by installments — credit — a contract innocent in its inception, not affected by subsequent fraud — evidence of fraud.*

A firm brought an action upon contract, against the vendees named therein, to recover the contract-price of certain goods sold. It appeared that the contract, which was made in February, was entire, but that the deliveries were to be by installments, and that a credit of three months was given upon each installment. The vendees failed about November thirtieth, and upon December sixteenth, and before the credit upon the last installments had expired, the firm brought the action. The firm never rescinded the sale, but upon December eighth they wrote to the vendees that because of their failure the firm would sell, for account of the vendees, the last installment of goods which had not been delivered.

The court submitted to the jury the question whether the vendees had been guilty of fraud in receiving the goods under the contract. The jury found that there was fraud perpetrated by the defendants at about the date of the assignment " by the fraudulent conversion of a portion of their assets," and the plaintiffs recovered judgment.

*Held,* that this was improper.

That as the contract of sale was made in good faith in February, it could not be rescinded because the vendees fraudulently converted their property in the following November.

*Arnold* v. *Shapiro* (29 Hun, 478) limited.

That a preconceived design not to pay for goods purchased might be evidenced by a fraudulent disposition of property thereafter made, but that this rule did not apply to such a disposition not contemplated at the time of making the contract.

*Semble,* that while a vendor may rescind a contract without also rescinding a credit given thereon, yet when it is considered that a price is usually determined to some extent by the length of the credit, it would, in practice, be difficult, if not impossible, to sustain the contract and annul the credit.

APPEAL by the defendants, Joseph Gallinger and Samuel Gallinger, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 14th day of March, 1891, upon a verdict for the plaintiffs for $4,029.57, at a trial before the court and a jury at the New York Circuit; rendered on the ground that the jury " believe that there was fraud perpetrated on or about November 30, 1888, the date of the assignment by the defendants, by the fraudulent conversion of a portion of their assets," also from an order, entered in said clerk's office on the 26th day of March, 1891, denying the defendants' motion to set aside the verdict and for a new trial.

*Adolph L. Sanger* and *Louis Marshall,* for the appellants.

*Blumenstiel & Hirsch,* for the respondents.

BARRETT, J. :

This action is for goods sold and delivered at agreed prices. The defense is, in substance, a credit which had not expired when the action was brought. The plaintiffs went to trial conceding the unexpired credit, but claiming an avoidance of the credit on the ground of fraud. The material facts are these : The contract was for future deliveries. It was made on the 21st of February, 1888. It reads as follows :

NEW YORK, *Feb.* 21st, 1888.

*Order.*

Given by Gallinger & Co., 36 Barclay St., N. Y.
        abt.

5 Cases Sept. 1st.   5 c. abt. Sept. 15.   Abt. Oct. 1st.
5 Oct. 15th.   5 abt. Nov. 1st & 5 abt. November 15th.
        Subject to change of Tariff.

with privilege of calling for ten cases of the above after July first, by giving the notice of six weeks thirty cases full cut three inch U Drop of 10,000 each case.

Price, One Dollar sixty-two one-half cents.

Terms, 3 mths.           Acceptance,

WM. FOERSTER & CO.

This contract resulted from personal solicitation on the part of one of the plaintiffs, and there is no pretense anywhere in the case that the defendants induced the plaintiffs to enter into the contract or to part with their goods. There was no evidence that the defendants were insolvent at this time, nor was there any evidence of fraud in the making of the contract, either by way of active misrepresentations, fraudulent concealment, preconceived design to cheat or otherwise. This was explicitly stated by the learned judge in the opening of his charge, and the jury were then requested to determine whether the defendants were subsequently guilty of fraud in receiving the goods under the contract. The jury gave a verdict for the plaintiff, adding, as the ground, that they believed " that there was fraud perpetrated on or about November 30, 1888, the date of the assignment by the defendants, by the fraudulent conversion of a portion of their assets."

The goods sued for were all delivered before the 30th of November, 1888, and, consequently, the jury found that the defendants were guilty of fraud in receiving goods (which they were legally bound to take) because of the fraudulent conversion, at a subsequent period, of a portion of their assets. Even if this special appendage should be stricken from the record, the utmost that can be claimed in support of the verdict is, that the defendants were buying goods fraudulently from other people at the time they were called upon to fulfill their contract with the plaintiffs; also, that they were then insolvent, and that if they had not remained silent on that head, the plaintiffs might have exercised the right to hold the goods, in analogy to stoppage *in transitu*, until the notes given for the purchase-price were paid. We do not think, however, that either of these positions is tenable. The only contract between the parties was that made in February. Such contract was entire, and it was of binding obligation in its entirety. The deliveries under it were alone divisible.

If the contract had amounted to a mere option, as in *Ames* v. *Moir* (138 U. S., 306), we agree that it would have been a fraud if the defendants, with the preconceived design of securing possession of the goods without payment, had made a call under such option. Here, however, the defendants were bound by the terms of the contract to take the goods at certain specified dates, and it appears that they substantially begged the plaintiffs (without success, however) to relieve them from their obligation on that head. It is idle to talk of rescinding the delivery of the goods. The delivery was not the contract, but in execution of it; and the contract cannot be rescinded, because it was not tainted with fraud. A contract of sale, made innocently and in good faith, cannot be rescinded because the vendee subsequently purchases goods from other people with a design to cheat them. If the contract of sale was made in contemplation of such fraudulent acts, and with the intent, before the credit expired, to make such fraudulent disposition, that would be a different thing. That would show a preconceived design to cheat and defraud. But, where nothing of the kind was contemplated when the contract was made, it is difficult to see how a subsequent change of heart is to relate back and make that fraudulent which was originally innocent. There is an observation in *Arnold* v. *Shapiro* (29 Hun, 478), upon which the learned judge at circuit felt constrained to submit this question of subsequent fraud to the jury. This case is not fully reported, and it is not quite clear whether all that was there said was necessary to the decision. The rule laid down seems to have been that fraud in contracting the debt may be predicated of a fraudulent disposition of the debtor's property in contemplation of making the contract. In other words, that a preconceived design not to pay for goods purchased may be evidenced by a fraudulent disposition of property already made or contemplated, as well as by other facts. It was also held that this principle is equally applicable to avoiding an existing credit obtained by a concealment of such fraudulent disposition or contemplated disposition. We entirely agree with this view, when limited to a fraudulent disposition of property made prior to, or even contemplated at the time of, obtaining the credit. The same result could scarcely have been intended to apply to a subsequent disposition of property not contemplated at the time of making the contract. The

observation is, it is true, broad enough to cover this latter proposition; but it may, without a strained interpretation, be limited to a subsequent disposition fraudulently contemplated when the contract was made. The text of this observation is, that "the same effect should also follow such a disposition of the debtor's property *after he has contracted the debt and secured the credit.*" The reason given for this view is, that it is always implied in such transactions that the debtor will make no disposition of his property which will operate as a fraud upon his creditor. This means, we presume, that business is done with the general idea that people will not thereafter cheat their creditors. But that understanding can scarcely be said to be impliedly engrafted upon all contracts so as to alter their legal effect in case one of the parties shall subsequently do something which may militate against due performance. An agreement to do something at a given time cannot well be varied into an agreement to do it at another time by an implication of a condition subsequent to act honestly. We think the case on this head was erroneously presented to the jury. The plaintiffs did not rescind the contract, and the action was not for the value of the goods said to have been fraudulently received by the defendants. On the contrary, the plaintiffs deliberately affirmed the contract, and it is probable that they did so with knowledge of the defendants' fraud. They certainly did so with knowledge of the defendants' insolvency. After the failure, they notified the defendants that they intended to sell the remaining goods on their account. On the 8th of December, 1888, the following letter was sent to the defendants:

New York, *Dec.* 8, 1888.

Messrs. Gallinger & Co., *Pittsburgh:*

Gents. — Owing to your failure we propose to sell 5 cases Prismen for your ℀ by the 15th, inst., unless you redeem them by that date or furnish guarantee that they will be paid for in cash less Disct.

Respectfully.

WM. FOERSTER & CO.

And one of the plaintiffs testified as follows: "They did not accept them (these five cases) by the fifteenth of December and we then sold these goods *for their account.*" This action was brought the next day, December sixteenth, which is the date of the summons.

It is a further affirmation of the contract. For the complaint is *upon the contract.* It is not for the value of the goods delivered, but for the prices agreed upon in the contract. It is plain, therefore, that the only rescission which has been attempted is of the credit. It must be conceded that, under the authorities in this State, the plaintiffs had a right to rescind the credit without rescinding the contract of sale. ( *Wigand* v. *Sichel,* 3 Keyes, 120 ; *Roth* v. *Palmer,* 27 Barb., 652.) As, however, the agreed prices were made with relation to the credit, it is difficult to perceive how the one can stand and the other fall. *Non constat,* but the prices would have been lowered for cash. The rule laid down in these cases amounts, at least, to punishing the defendants' fraud by an arbitrary fine of the interest on the contract-price for the unexpired term of credit. There would be no practical difficulty with the more logical rule that the contract of sale should be rescinded *in toto.* For, then, in case the goods were still in the possession of the vendee, they could be restored to the vendor by replevin, or an action for conversion would lie upon refusal to restore them on demand. And in case the goods had been sold or otherwise used by the debtor, an action for their value would lie, for in case of such use the law would imply a promise to pay the value. In the case last cited, HOGEBOOM, J , made this observation : " Indeed, I think the plaintiffs might properly and *preferably* have prosecuted simply for goods sold and delivered, and allowed the rest of the transaction to come out as a matter of evidence. If he had done so, the order of proof would have been as follows : The plaintiffs would have proved that they delivered goods of a certain value to the defendant, and that the latter received the same or that they were afterwards shown to be in his possession. From this evidence the law would imply a promise to pay the value and the plaintiffs might properly have rested."

The answer to this is said to be that where there is an express contract the law will not imply one, and that, consequently, if the whole contract is avoided the vendor must bring *trover.* Without acceding to the doctrine laid down in the above quotation, we may safely say that the rule against an implication where there is an express contract need cause no practical embarrassment, for where the whole contract is avoided because of the vendee's fraud, the

express contract has ceased to be. It is as though it had never existed, and as though the parties simply stood in such relations and implications as flow from the delivery of goods by the one, and their receipt and possession by the other. It may be that from the delivery of the goods by the vendor, and their receipt and possession by the vendee standing alone, the law would not imply a sale and a promise to pay the value. But from such delivery and possession, followed by the use of the goods by the vendee as his property, a promise to pay the value would certainly be implied.

But without dwelling further upon this branch of the case, we think that the complaint should have been dismissed because of the failure to show that the contract was entered into fraudulently, or in contemplation of any fraudulent purpose.

The judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and ANDREWS, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.